I. B. KLEINART RUBBER CO. et al. v. STEIN et al.

(Circuit Court of Appeals, Seventh Circuit. October 4, 1904.)

No. 1,026.

1. PATENTS—INVENTION—STOCKING SUPPORTERS.

The Parramore patent, No. 629,391, for a stocking supporter consisting of duplicate suspension tapes and a single hanger adapted to be detachably fastened to a corset stud, is void for lack of patentable invention in view of the prior art, and especially of the Andrews patent, No. 550,-551, which in mechanical means potentially adapted to secure the same result anticipated the Parramore device, in which the place of suspension was merely shifted from the side to the front of the corset.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

For opinion below, see 125 Fed. 19.

The suit was brought in the Circuit Court to restrain infringement of letters patent No. 629,391, issued July 25th, 1899, to Robert W. Parramore, for a Hose Supporter.

The patentee describes his invention as follows:

My invention relates to improvements in stocking-supporters of that class which are used in connection with corsets; and the object of the invention is to provide an improved construction especially designed to be connected with a stud or clasp of the corset, thus dispensing with the use of safety-pins and other attaching devices, which have been found injurious to the corset, and enabling a tight-fitting skirt to be clasped around the corset without hindrance from the hose-supporter.

Another object of the invention is to utilize the stocking-supporter as a means for reducing the prominence of the stomach, the supporter being connected with the corset at a point where the sections of the corset meet, the pull on the supporter serving to keep the corset down in front.

A further object of the invention is to provide means which may be used advantageously on corsets of large size and to construct the entire device in a simple and inexpensive manner.

With these ends in view the invention consists in the novel construction, arrangement, and adaptation of parts, which will be hereinafter fully described, and particularly pointed out in the claims.

To enable others skilled in the art to understand the invention, I have illustrated the same in the accompanying drawings, forming a part of this specification, and in which—

Figure 1 is a view illustrating the hose-supporter connected in operative relation to the clasp of a corset. Fig. 2 is an enlarged perspective view of the hanger detached from the corset and from the tapes of the hose-supporter. Fig. 3 is a vertical sectional view of the hanger. Fig. 4 is a detail view of the metallic hanger-piece.

The same numerals of reference are used to designate corresponding parts in each of the several figures of the drawings.

The hanger 5 of the stocking-supporter of my invention is a composite device consisting of a fabric body 6 and a metallic hanger-piece 7. This plate is stamped in a single piece from a metallic sheet, and it is curved or arched in order to provide a convex upper edge, from which may extend the means by which the hanger may be connected with the stud at the lower end of a corset-clasp. This hanger-piece is formed with an elongated loop or eye 8, which extends from the center of the upper convex edge thereof, and at its ends the hanger-piece is enlarged to form the ears 9. The body of the hanger consists of two pieces of fabric 10, cut to proper shape and dimensions, and a binding 11, which is stitched at 12 around the edges of the fabric body-pieces. The metallic hanger-piece is fitted in between the pieces of fabric which form the body and in a position to have the central loop or eye 8 protrude beyond the edges of the body, after which the binding 11 is fitted or applied to the layers

of fabric and the parts are united together by the stitches. To confine the hanger-piece against displacement within the layers of fabric, a row of stitches unites the fabric layers together within the inner concave edge of said hanger-plate, as at 13. The lower straight edges of the layers of fabric forming the body are united by the straight rows of stitches 14, and the eyelets 15 are attached to the ears of the hanger and to the layers of fabric.

My stocking-supporter employs a pair of suspension elastics or tapes 16, the upper ends of which are fitted between the layers of fabric forming the body, and said elastics or tapes are attached to the body by the stitches 14, which unite the lower edge of the fabric layers. The connecting tapes or elastics 17 are connected by the adjustable slides 18 to the suspension-elastics. 16, so that the length of the suspension devices may be varied in a manner well understood by those skilled in the art. The connecting tapes or elastics 17 are each provided with the attaching-clasps 19, by which the stocking may be attached to the supporter.

The hanger is adapted to be fitted to the lowermost stud of the series of studs forming a part of the clasp on an ordinary corset, and in Fig. 1 of the drawings this stud is indicated by the numeral 20.

To use my improved hose-supporter, the eye or loop 8 of the hanger is fitted to the stud 20, after which the corset-clasp is closed over the eye or loop, and connected to the stud, thereby attaching the hanger 5 to the corset in a manner to prevent the hanger from being disengaged accidentally from the corset. The slides 18 are adjusted properly on the suspension-elastics, and the clasps 19 are attached to the stockings.

The use of a supporter constructed in accordance with my invention entirely overcomes the necessity for attaching the supporting or suspension elastics 16 to the corset by means of safety-pins, clasps, or other devises, which have a tendency to injure the corset by pulling out of place and tearing the fabric of the corset.

The improved supporter has a hanger which takes up but very little room at the point where it is attached to the corset, so that the hanger may be connected to the best advantage to the clasp-stud, and at the same time the hanger is prevented by the corset-clasp from detachment accidentally from the corset. The improved hanger has a pliable fabric body which fits closely against the corset or the person, so that a tight-fitting skirt may be worn around the waist of the person.

The hanger forming the leading feature of my invention is simple in construction, and the metallic hanger-piece serves to strengthen and reinforce the fabric body of the hanger.

The entire device is simple and cheap in construction, easy of use and application, and can be manufactured very cheaply.

The employment of the eyelets 15 in the hanger of my improved stocking-supporter enables the hanger to be connected to studs especially provided on a corset of large size for the connection of the stocking-supporter to the corset, and at the same time these eyelets tend to strengthen the hanger, because they fasten the ends of the hanger-piece to the fabric body.

By reference to Fig. 1 it will be noted that the hanger is connected to the corset in a manner to lie outside of the overlapping section of the corset, and thus the hanger is made to press the meeting edges of the corset-sections together to further insure the snug fitting of the parts.

When the device is in position, the lower front end of the corset will be held close against the body, so that the skirt will fall gracefully from the waist of the wearer.

Although I have described that the metallic element of the hanger is made by stamping it from a piece of sheet metal, I do not strictly confine myself to this sheet-metal construction, because it is evident that the metallic element of the hanger may be made from a piece of wire which is bent to the proper shape.

It will be understood that by reason of the fact that the hanger is connected to the corset at the particular point claimed the pull on the tapes serves to keep the corset down in front, thereby greatly reducing the prominence of the stomach without causing any harmful results, as the pressure on the stomach is only when needed—i. e., when standing or walking.

. Changes in the form, proportion, size, and the minor details of construction within the scope of the appended claims may be made by a skilled constructor without departing from the spirit or sacrificing the advantages of the invention.

Having thus fully described the invention, what I claim as new, and desire to secure by Letters Patent, is—

1. A stocking-supporter consisting of the duplicate suspension tapes or elastics, and a single hanger to which the upper ends of the tapes or elastics are connected, said hanger being provided with an eye or loop adapted to be detachably engaged with the stud of a corset-clasp, substantially as described.

2. A stocking-supporter consisting of the duplicate stocking-engaged members, and means for permanently uniting the two members at their upper ends, said means being in the form of a hanger-piece which is adapted to be engaged with the corset at the point where the sections of the corset meet, substantially as described.

3. In a stocking-supporter, a means for connecting the suspension tapes or elastics to a corset consisting of a fabric body and a metallic hanger-piece which is united to said body, said hanger-piece having a central loop or eye which is prolonged or extended beyond the fabric body, and is adapted to be held on the stud of a corset-clasp by the eye thereof for the purposes described, substantially as set forth.

4. A stocking-supporter consisting of a hanger having the metallic hanger-plate provided with a central loop or eye and the ears at the ends of said plate and the fabric body having its layers united to the hanger-plate to inclose the latter, the eyelets secured to the ears of the hanger-plate and to the layers of said body, the suspension-elastics united to fabric body at the edge opposite the hanger-plate, and the connecting tapes or elastics connected adjustably to the suspension-elastics and provided with the clasps, substantially as described.

The device used by appellees, said to infringe appellants' patent, is, except in respect of the metallic hanger piece, practically a copy of the Parramore device. The hanger piece of the appellees' device has, instead of appellants' elongated loop, only an eye, and a slot used in connecting the fabric body therewith.

Appellees cited, in the Circuit Court, among other patents, No. 550,551, issued November 25th, 1895, to J. C. Andrews; patent No. 197,587, issued November 27th, 1877, to J. D. Baufield; patent No. 224,899, issued February 24th, 1880, to R. W. Gray; patent No. 369,678, issued September 13th, 1887, to A. J. Arthur and S. W. Gray; patent No. 606,064, issue June 21st, 1898, to N. W. Lennon, and patent No. 638,540, issued December 5th, 1899, to E. F. Young.

Testimony was also introduced intended to show prior use of the appellants' conception in New York, Brooklyn, and other places.

The Circuit Court held the patent invalid, and dismissed the bill, and from that decree this appeal is prosecuted.

The further facts are stated in the opinion of the court.

Edwin H. Brown, Louis C. Raegner, and Wm. O. Belt, for appellants.

George P. Fisher, Jr., for appellees.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge, after the foregoing statement of facts, delivered the opinion of the court:

Whatever basis for the charge of infringement in this case the Parramore hose suspender may have, must be found in the claim that Parramore, for the first time, constructed a suspender that combined duplicate suspension tapes or elastics with a single hanger; such hanger being adapted to be hung on the stud of the corset clasp, but easily detachable therefrom. No decree for appellant could be based upon the introduction of the arched metallic plate providing a convex upper

edge, from which the hook that engages the corset stud extends; for a plate of that form is not used in appellee's device. No decree could be based upon the specified piecing together and seaming of the fabric to the hanger piece; for this was only a means adapted to the use of the arched plate. Besides, the appellee is not shown to have followed such seaming and piecing.

Whatever practical merit the Parramore suspender has, lies in the fact that, as an entirety, it enables the wearer to suspend her stockings to the lower stud of her corset, whereby, when walking, the suspender has a tendency to press in the stomach, but when sitting, is free from tension, thus becoming a help to what is known as a straight front. Another merit is that the suspender closely fits the figure of the wearer, thus allowing garments to fall over it, easily and gracefully, and without the disfigurement produced by the use of safety pins. Whatever patentable character the alleged invention has, must be found, then, in the fact that Parramore was the first person who has adapted to this new desideratum the precise mechanical means that would carry it out.

The difficulty, however, with appellants' case is, that all these advantages named are potentially present, at least, in the Andrews and other prior patents; and that all the mechanical means to effectuate them are embodied in the prior patents cited. The manifestness of this is so far recognized by counsel for appellant, that their chief argument to obviate its effect upon the fortunes of the case is, that though the Andrews and other patents, potentially anticipate the Parramore patent, the supporters described therein require readaptation to fit them to the uses to which the Parramore patent is put.

The Andrews patent was a side hose supporter. The readaptation referred to, is its tranference from the side to the front; as also the shortening of the suspenders made necessary by the fact that the distance from the corset stud, to the hose in the front, is less than the distance from the corset, where side suspenders are fastened, to the hose.

We cannot bring ourselves to the connclusion that a shortening of the suspenders, so as to adapt them to the shorter line to be traversed, is patentable invention. Such shortening would suggest itself, it seems to us, to any wearer who had occasion, for any reason whatever, to transfer the suspenders from side to front.

Nor can we bring ourselves to the conclusion that the mere transfer of the hanging point of the suspender, from the side of the corset to its front, is patentable invention. Straight fronts, in the figure of women, having come into vogue, it appears to us to have been but the ordinary and natural exercise of common sense, to have brought the hose supporter from the side to the front. Patentability cannot be decreed to every little shift that a woman may make in the arrangement of her garments, or the location of the means through which such arrangements are effected.

Parramore v. Taylor—decided in the Circuit Court of Appeals for the Second Circuit—114 Fed. 97, 52 C. C. A. 45, it is true, sustained the Parramore patent. But that case was decided on a record from which the court found, as a fact, that the Parramore patent was the first to describe a complete detachable device that sustained both stockings

from a single existing point of support on the corset. The fact, as thus found, was the pivot on which that case turned. From the record before us we are unable to find that fact. Either the Andrews patent was not brought distinctly to the attention of that court; or for some other reason, the court failed to see, as it appears plain to us, that the Andrews patent, in mechanical means, adaptable to a detachable device that will sustain both stockings from a single point of support on the corset, is identical with the mechanical means employed by Parramore.

The decree of the Circuit Court is affirmed.